**Kenneth L. BINGAMAN, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–8209.

Court of Appeals of Alaska.

Aug. 22, 2003.

James H. McComas, Anchorage, for Appellant.

Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Alaska Evidence Rule 404(b)(4) states that, in a prosecution for a crime involving domestic violence, "evidence of [the defendant's] other crimes involving domestic violence ... against the same [person] or another person ... is admissible". This appeal requires us to clarify the meaning of Evidence Rule 404(b)(4) and to explain the relationship between this rule and Evidence Rules 402 and 403—the rules that require the exclusion of irrelevant evidence, and that authorize a trial judge to exclude even relevant evidence if the probative value of this evidence is outweighed by the likelihood that it will mislead the jury or induce the jury to decide the case on improper grounds.

We conclude that the effect of Rule 404(b)(4) is to exempt evidence of a defendant's other crimes of domestic violence from the normal bar on character evidence ("propensity" evidence) codified in Evidence Rule 404(b)(1). In other words, Rule 404(b)(4) authorizes a court to admit evidence of a defendant's other crimes involving domestic violence even though the only relevance of this evidence is to prove that the defendant characteristically engages in similar acts of domestic violence, thus making it more likely that the defendant committed the act of domestic violence alleged in the current litigation.

However, the fact that evidence of other crimes of domestic violence is *admissible* under Rule 404(b)(4) does not necessarily mean that this evidence should be *admitted*. Rule 404(b)(4) does not require the admission of this evidence; the rule merely exempts this evidence from the normal prohibition against "propensity" evidence.

In deciding whether the evidence should be admitted, a trial judge remains obliged to enforce Evidence Rule 402, which bars the admission of irrelevant evidence. In addition, Evidence Rule 403 continues to apply to this evidence. Thus, even if the evidence is relevant, a trial judge is authorized to exclude the evidence if its probative value is outweighed by its potential for confusing the issues, misleading the jury, or engendering unfair prejudice—in particular, the potential that this evidence will induce the jury to decide the case on improper grounds.

The defendant in this case, Kenneth L. Bingaman was charged with assaulting his live-in companion, K.H., and sexually abusing K.H.'s teenage daughter, S.H.. Under the rubric of Evidence Rule 404(b)(4), Bingaman's trial judge allowed the State to present evidence of some sixty prior instances of Bingaman's misconduct. Some of these prior acts involved K.H., some involved her children, and some involved other women with whom Bingaman had had romantic relationships during the preceding twenty years.

Not once did the trial judge exclude offered evidence of a prior bad act, even though some of these acts had little or nothing to do with the offenses charged against Bingaman (assault and sexual abuse of a minor). As a result, only twenty percent of the testimony presented at Bingaman's trial dealt with the acts for which Bingaman was charged. The remaining eighty percent of the testimony dealt with other acts or occurrences.

From all of this, we conclude that the trial judge violated Evidence Rule 402 and abused his discretion under Evidence Rule 403. Bingaman is therefore entitled to a new trial.

### Underlying facts

Kenneth L. Bingaman was charged with third-degree assault under AS 11.41.220(a)(1)(A) for threatening to kill his girlfriend, K.H., and with three counts of second-degree sexual abuse of a minor under AS 11.41.436(a)(5)(A) for fondling the breasts of his girlfriend's teenage daughter, S.H.. Both of these offenses qualify as "crimes involving domestic violence" for purposes of Evidence Rule 404(b)(4).

(Evidence Rule 404(b)(4) expressly adopts the definition of "crime involving domestic violence" contained in AS 18.66.990.[1] Under AS 18.66.990(3)(A), any crime against a person codified in AS 11.41 qualifies as a "crime involving domestic violence" if that crime was committed by one "household member" against another. Both of the charges against Bingaman—third-degree assault and second-degree sexual abuse of a minor—are codified in AS 11.41. And, under AS 18.66.990(5)(B), the term "household member" includes "adults or minors who live together". Bingaman lived with K.H. and her children at the time of the alleged offenses. Thus, Bingaman was charged with "crimes involving domestic violence" within the meaning of AS 18.66.990 and Evidence Rule 404(b)(4).)

Because Bingaman was being tried for crimes involving domestic violence, the State proposed to introduce evidence of Bingaman's other crimes of domestic violence pursuant to Evidence Rule 404(b)(4). Initially, the prosecutor notified the court and the defense attorney that the State intended to introduce evidence of eight different acts committed by Bingaman, each one constituting an act of "domestic violence" as defined in AS 18.66.990.

These eight acts included one prior act of violence against K.H. (the named victim in the third-degree assault charge), and one occasion when Bingaman purportedly violated a domestic violence restraining order related to the present case, by having a friend contact K.H. and ask her to drop the pending assault and sexual abuse charges. The other six incidents involved physical assaults by Bingaman upon K.H. and two of her children.

Superior Court Judge Harold M. Brown initially indicated that the bulk of the State's offered evidence would probably be excluded under Evidence Rule 403 because it was more prejudicial than probative. Undeterred, the prosecutor supplemented the State's initial offer of proof with dozens of uncharged bad acts, each one ostensibly falling within the category of "domestic violence". Some of these were prior assaults and acts of intimidation or degradation committed against K.H. as early as 1993. Some were prior assaults and acts of intimidation or degradation committed against K.H.'s children, again as early as 1993. And some were assaults and acts of intimidation or degradation allegedly committed by Bingaman against five other women with whom he had previously had romantic relationships between 1982 and 1993 (i.e., as much as twenty years in the past).

Ultimately, Judge Brown issued a written pre-trial ruling in which he concluded that all of the State's evidence was presumptively admissible under Evidence Rule 404(b)(4)—although he indicated that he would "proceed with caution" at trial to make sure that none of the testimony was inordinately inflammatory.

As things turned out, none of the State's evidence was excluded. All of the incidents described in the State's two offers of proof—

---

1. Evidence Rule 404(b)(4) states, "In this [rule], 'domestic violence' and 'crime involving domestic violence' have the meanings given in AS 18.66.990."

plus others—were admitted at Bingaman's trial.

The prosecutor outlined much of this evidence in his opening statement to the jury, and he openly encouraged the jurors to view Bingaman as a man who had abused one woman after another. The prosecutor concluded his opening statement with the assertion: "The [State's] evidence will show that, over [a] period of twenty-plus years, the defendant has emotionally, psychologically, and physically abused ... three women: [K.H., D.S., and C.B.]." (K.H. was the alleged assault victim in this case, while D.S. and C.B. were women from Bingaman's past.)

As promised, the prosecutor presented testimony that depicted Bingaman as a man who habitually abused the women in his life, controlling them with violence and threats of violence, as well as cocaine. Although Bingaman was charged with three counts of sexual abuse of a teenage girl, very little of the State's evidence pertained to these charges. Instead, the State's case focused primarily on Bingaman's prior assaultive conduct and his propensity to engage in acts of violence and intimidation against the women who were his romantic partners.

Two of these women testified that Bingaman had forced them to earn money for him by working as strippers at the Great Alaskan Bush Company. One of these women testified that Bingaman had forced her to undergo breast augmentation so she could make more money. K.H. also testified that she had had surgery to augment her breasts while she was living with Bingaman, but she never danced in a strip club because she was too old.

Bingaman took the stand in his own defense. He flatly denied any wrongdoing. He claimed that K.H. was falsely accusing him so that she could regain possession of her house, which she had sold to him.

To undermine the credibility of the various women who appeared as government witnesses, Bingaman's attorney introduced dozens of cards and letters the women had written to Bingaman, each expressing their love and appreciation for his companionship.

Bingaman's attorney also introduced dozens of photographs depicting Bingaman and a smiling, happy K.H. and children. In addition, Bingaman's attorney introduced evidence suggesting that K.H. had drained her children's trust accounts to fund her cocaine habit, and that she was now trying to blame her actions on Bingaman.

During rebuttal, the State presented an expert witness on domestic violence to explain the cycle of violence, to explain why a battered woman might send love notes and cards to her abuser, and to explain that some men batter women based on their need for control.

Later, during closing argument, the prosecutor highlighted each of the other bad acts portrayed by the State's evidence. He argued, in essence, that Bingaman was the type of man who battered women to control them. The prosecutor also argued that Bingaman's fascination with female breasts (as evidenced by the fact that two of the three women he dated obtained breast augmentation during their relationships with him) made it more likely that S.H. was telling the truth when she testified that Bingaman fondled her.

The jury convicted Bingaman of all four counts (one count of third-degree assault, and three counts of second-degree sexual abuse of a minor).

*The legislative history of Evidence Rule 404(b)(4)*

Alaska Evidence Rule 404(b) originally had but one provision—the provision that is now Rule 404(b)(1).

 Evidence Rule 404(b)(1) codifies the common-law doctrine forbidding the admission of "propensity" evidence. In this context, the phrase "propensity evidence" is legal shorthand; it means: evidence of a person's other bad acts whose sole relevance is to prove the person's character, so that the person's character can then be used as circumstantial evidence that the person acted true to character during the episode being litigated.[2]

---

**2.** *See Smithart v. State,* 946 P.2d 1264, 1270–71 (Alaska App.1997), *reversed on other grounds,* 988

*a. Evidence Rule 404(b)(4)'s predecessors: Rules 404(b)(2) and (b)(3)*

In 1988, the Alaska Legislature amended Rule 404(b) by adding subsection (b)(2) and re-numbering the original provision as 404(b)(1).[3] The new Rule 404(b)(2) was intended to make it easier for the government to introduce evidence of a defendant's other acts when the defendant was prosecuted for sexual or physical abuse of a minor.[4]

The 1988 House Judiciary Committee files concerning Evidence Rule 404(b)(2) are voluminous. (They fill nearly four microfiche cards.[5]) Most of this information focuses on the high recidivism rates among sex offenders and the difficulties of prosecuting cases involving child victims. One can infer from these files that the legislature believed that there was a particularized need to abrogate the normal prohibition against propensity evidence in prosecutions for abuse of children.

Under Evidence Rule 404(b)(2), the government must establish the relevance of the defendant's other bad act—by proving (i) that the defendant's act occurred within the preceding ten years, (ii) that it involved conduct similar to the offense charged, and (iii) that it was committed upon a person similar to the victim of the present offense. If these foundational criteria are established, Rule 404(b)(2) authorizes admission of the evidence even though this evidence would be barred by Rule 404(b)(1)—that is, even though the sole relevance of the evidence is to establish the defendant's character, so that the defendant's character can be used as circumstantial evidence that the defendant

committed the act of abuse alleged in the current case.[6]

Six years later, in 1994, the legislature again amended Rule 404(b), this time adding subsection (b)(3).[7] Evidence Rule 404(b)(3) applies to prosecutions for sexual assault and attempted sexual assault. Again, the legislature's intent was to expand the use of other crimes evidence.[8]

As we acknowledged in *Wardlow v. State,* the legislature enacted Evidence Rule 404(b)(3)

in direct response to decisions of this court that limited the State's ability to introduce evidence of a defendant's prior sexual crimes when, in a prosecution for sexual assault or attempted sexual assault, the defendant asserted that the sexual activity was consensual. In particular, the legislature was reacting to this court's construction of Evidence Rule 404(b)(1)—our decision [in *Velez v. State*[9]] that Rule 404(b)(1) barred the State from introducing evidence of a defendant's other sexual assaults if that evidence was offered solely to prove the defendant's proclivity to sexually assault women.

*Wardlow,* 2 P.3d 1238, 1246 (Alaska App. 2000) (footnotes omitted).

In prosecutions for sexual assault, Rule 404(b)(3) authorizes the admission of evidence of the defendant's other sexual assaults or attempted sexual assaults, whether against the same person or another, if the defendant relies on a defense of consent. And in prosecutions for *attempted* sexual assault, Rule 404(b)(3) authorizes the admission

---

P.2d 583 (Alaska 1999). *See also Beaudoin v. State,* 57 P.3d 703, 707–08 (Alaska App.2002) (summarizing the discussion in *Smithart*).

**3.** SLA 1988, ch. 66, §§ 8–9.

**4.** See the House Judiciary Committee's Letter of Intent accompanying SLA 1988, ch. 66, § 9. This Letter of Intent is found in the 1988 House Journal, p. 2332.

**5.** *See* 1988 House Judiciary Committee files, microfiche numbers 4689–93.

**6.** *See Smithart,* 946 P.2d at 1270. *See also Hess v. State,* 20 P.3d 1121, 1124 (Alaska 2001), which construes the sibling provision, Evidence Rule

404(b)(3). *Hess* is described in more detail in the main text, *infra.*

**7.** *See* SLA 1994, ch. 116, § 2.

**8.** *See* SLA 1994, ch. 116, § 1 ("Findings and Purpose"): "[I]n sexual assault and attempted sexual assault cases in which the defendant claims that the victim voluntarily 'consented' to the sexual activity, further amendment [of Evidence Rule 404(b)] is necessary to permit the prosecution to rebut this claim by introducing evidence of other sexual assaults or attempted sexual assaults by the defendant."

**9.** 762 P.2d 1297, 1304 (Alaska App.1988).

of this evidence regardless of whether the defendant relies on a defense of consent.

In *Clark v. State*, 953 P.2d 159, 163 (Alaska App.1998), we concluded that Rule 404(b)(3) has the same evidentiary effect as Rule 404(b)(2): that is, Rule 404(b)(3) exempts the specified evidence from Rule 404(b)(1)'s prohibition against propensity evidence. Our construction of Rule 404(b)(3) was later endorsed by our supreme court in *Hess v. State*, 20 P.3d 1121 (Alaska 2001):

[I]n 1994 the Alaska legislature expanded the admissibility of other-acts evidence in sexual assault prosecutions by amending Alaska Evidence Rule 404. Alaska Evidence Rule 404(b)(3) now permits the prosecution to offer evidence of other sexual assaults or attempted sexual assaults if the defendant raises the defense of consent. . . .

[The United States] Congress in 1994 [likewise] amended the federal rule regarding admissibility of prior sexual assaults; [Federal Evidence Rule 413] now allows evidence of similar offenses "for its bearing on any matter to which it is relevant." As a general rule, evidence that a defendant committed a prior act is inadmissible for the purpose of proving the defendant's propensity to commit the act currently charged. The amended federal rule has been interpreted to be an exception to that general rule. We adopt that interpretation for Alaska's corresponding evidence rule [*i.e.*, Evidence Rule 404(b)(3)].

*Hess*, 20 P.3d at 1124 (footnotes omitted).

*b. Evidence Rule 404(b)(4)*

This brings us to the evidence rule at issue in Bingaman's case: Rule 404(b)(4). Subsection (b)(4) is the most recent legislative addition to Rule 404(b); it was enacted in 1997.[10]

As we have already discussed, the legislative history supporting Evidence Rules 404(b)(2) and (b)(3) demonstrates the legislature's active consideration of the need to relax Rule 404(b)(1) in cases involving the abuse of children and in cases involving sexual assaults. In contrast, the legislative history of Rule 404(b)(4) is scanty. Evidence Rules 404(b)(2) and 404(b)(3) were major components of their respective bills, and they received a corresponding degree of attention from the legislative committees that considered them. Evidence Rule 404(b)(4), on the other hand, was tacked onto a victims' rights bill by the House Finance Committee with very little discussion.[11]

Chief Assistant Attorney General Dean Guaneli, representing the Department of Law, explained to the House Finance Committee that the Department of Law was proposing the amendment to Evidence Rule 404(b) so that the law might "reflect[ ] that domestic violence is the type of thing that happens over and over again, and tends to escalate in violence".[12] The proposed change to Rule 404(b) was intended to clarify that evidence of "a pattern of physical abuse . . . on previous occasions could be admissible".[13]

Mr. Guaneli acknowledged that a defendant must be convicted for "the conduct that occurred [in] that particular instance" rather than for conduct on other occasions.[14] And he further acknowledged that, under the then-current evidence rules—*i.e.*, under Evidence Rule 404(b)(1)—evidence of a defendant's other acts of domestic violence could be admitted for the purpose of "explaining" or providing a "context" for what happened during the episode for which the defendant was being tried.[15] However, Mr. Guaneli declared that "different judges [were applying] the rule in different ways", and he con-

10. *See* SLA 1997, ch. 63, § 22.

11. The bill at issue was 1997 HB 9, which was eventually enacted as SLA 1997, ch. 63. According to § 1 of this session law, its primary purpose was to clarify that Alaska Evidence Rule 615—the rule that authorizes the exclusion of witnesses from the courtroom until they have testified—can not be used to deprive a crime victim of their constitutional right to be present at all criminal and juvenile delinquency proceedings.

12. *Id.*

13. *Id.*

14. 1997 House Finance Committee Minutes (February 18th), Tape HFC 97–31, Side 1.

15. *Id.*

tended that some judges were interpreting the current law too strictly against the admission of such evidence.[16] With little further discussion of this point, the House Finance Committee adopted the Department of Law's proposed amendment to Evidence Rule 404(b).[17]

Two months later, when House Bill 9 was taken up by the Senate Judiciary Committee, Assistant Attorney General Anne Carpeneti spoke to the Committee about the proposed amendment to Evidence Rule 404(b). Ms. Carpeneti offered another explanation for the proposed change in the law: she stated that the Department was seeking a modification of Rule 404(b) because "frequently, domestic violence cases are prosecuted without a witness to the offense—[because] the victim may have recanted or [may be refusing] to cooperate out of fear." In such instances, Ms. Carpeneti told the Committee, the case must be prosecuted with only the testimony of the police officers who were dispatched to the scene.[18] In response to questioning about the permissible use of prior-act evidence and the contemplated scope of the new rule, Ms. Carpeneti explained that "the State would [still] have to make a preliminary showing to the court that the information was ... relevant; the evidence could not automatically be introduced."[19]

Other than these brief discussions in the House Finance Committee and the Senate Judiciary Committee, the legislative minutes and files contain no information regarding the intended purpose or scope of Rule 404(b)(4), nor any other information regarding the perceived need for this rule.

And yet Evidence Rule 404(b)(4) is the most far-reaching of the legislative amendments to Rule 404(b). Compared to its sibling provisions (Rules 404(b)(2) and (b)(3)), Rule 404(b)(4) applies to a much broader range of evidence.

Evidence Rule 404(b)(4) states:

> In a prosecution for a crime involving domestic violence or [for] interfering with a report of a crime involving domestic violence, evidence of other crimes involving domestic violence by the defendant against the same or another person[,] or of interfering with a report of a crime involving domestic violence[,] is admissible. In this paragraph, "domestic violence" and "crime involving domestic violence" have the meanings given in AS 18.66.990.

Obviously, this rule goes far beyond the justifications that were offered by the Department of Law. As explained above, a Department representative told the House Finance Committee that the amendment was needed to ensure that judges would not interpret Rule 404(b)(1) so strictly as to exclude evidence of a pattern of physical abuse. And a second Department representative told the Senate Judiciary Committee that evidence of a defendant's other crimes of domestic violence was needed in cases where the purported victim of domestic violence either recants their accusation or refuses to testify at trial.

But Rule 404(b)(4) is not limited to evidence of a defendant's pattern of recurring or escalating physical abuse. Rather, as explained below, Rule 404(b)(4) adopts such an expansive definition of "domestic violence" that it authorizes a court to admit evidence of acts that have little or no relevance to establishing a pattern of physical abuse. Nor is Rule 404(b)(4) limited to instances in which the purported victim of domestic violence does not testify in support of the government's case. Rather, the rule applies to all prosecutions for crimes of domestic violence.

It is the second sentence of Rule 404(b)(4) that gives the rule a uniquely expansive reach. This second sentence declares that "domestic violence" and "crime involving domestic violence" are to be given the meanings ascribed to them in AS 18.66.990. By defining these terms in this way, Rule 404(b)(4) authorizes the admission of evi-

---

16. *Id.*, Tape HFC 97–31, Side 2.

17. *See* CSHB 9(Fin), § 18 (as originally offered by the Committee on February 19, 1997), later § 19 (the Committee's amended version offered on March 7, 1997).

18. 1997 Senate Judiciary Committee Minutes (April 9th), Tape 97–26, Log No. 105.

19. *Id.*, Log No. 245.

dence concerning acts that have little or nothing to do with the issues that normally would be litigated at a trial for domestic assault.

"Domestic violence" is normally understood to mean an assault committed by one domestic partner against another. But as we explained in *Carpentino v. State*, 42 P.3d 1137 (Alaska App.2002) (opinion on rehearing) (hereafter *"Carpentino II"*), AS 18.66.990 defines the phrase "domestic violence" in a special and wide-ranging way, quite divorced from its everyday meaning.

According to AS 18.66.990(3), the term "domestic violence" includes any of the following crimes (and attempts to commit any of the following crimes) when committed by one household member against another:

(A) [any] crime against the person under AS 11.41;

(B) burglary under AS 11.46.300–11.46.310;

(C) criminal trespass under AS 11.46.320–11.46.330;

(D) arson or criminally negligent burning under AS 11.46.400–11.46.430;

(E) criminal mischief under AS 11.46.475–11.46.486;

(F) terroristic threatening under AS 11.56.807 or AS 11.56.810;

(G) violating a domestic violence [restraining] order under AS 11.56.740; or

(H) harassment under AS 11.61.120(a)(2)-(4)[.]

This list of crimes obviously encompasses a broader range of conduct than physical assault upon a spouse or live-in companion. But this list is only half of the reason why Rule 404(b)(4)'s definition of "domestic violence" is so sweeping. The other contributing factor is the legislature's definition of "household member".

AS 18.66.990(3) defines "domestic violence" as any of the above-listed crimes when the crime is "committed by one household member against another". One might assume that this phrase refers to crimes in which the perpetrator and the victim share the same household. But the legislature has defined "household member" much more broadly.

Under AS 18.66.990(5), the term "household member" includes:

(A) adults or minors who are current or former spouses;

(B) adults or minors who live together or who have lived together;

(C) adults or minors who are dating or who have dated;

(D) adults or minors who are engaged in or who have engaged in a sexual relationship;

(E) adults or minors who are related to each other up to the fourth degree of consanguinity, whether of the whole or half blood or by adoption, computed under the rules of civil law;

(F) adults or minors who are related or formerly related by marriage;

(G) persons who have a child of [their] relationship; and

(H) minor children of a person in a relationship that is described in [subparagraphs] (A)-(G)[.]

As we noted in *Carpentino II*, when the statutory definition of "domestic violence" is combined with the statutory definition of "household member", the results are quite a bit different from the everyday meaning of "domestic violence against a household member":

The apparently expansive scope of "crime involving domestic violence" leads to some strange results.

For example, if an elderly uncle comes to visit his favorite nephew and, while lighting his pipe, recklessly scorches a table cloth or a chair, the old man has seemingly just committed an act of "domestic violence" as defined in AS 18.66.990(3). That is, the uncle has committed the listed offense of criminally negligent burning under AS 11.46.430 (negligently damaging the property of another by fire), and the victim is related to the perpetrator within the fourth degree of consanguinity—thus qualifying them as "household members" under AS 18.66.990(5)(E).

Similarly, if a group of former college roommates decide to hold a twenty-year reunion at one of their homes, and if one of the visiting former roommates gets drunk

and recklessly jams his friend's CD player while trying to insert a CD into it, this roommate has seemingly just committed an act of "domestic violence". The intoxicated roommate has committed the listed offense of fourth-degree criminal mischief under AS 11.46.486(a)(1) (tampering with the property of another with reckless disregard for the risk of harm or loss), and all of the former college roommates are "household members" under AS 18.66.990(5)(B).

*Carpentino II*, 42 P.3d at 1141.

Thus, the definition of "domestic violence" codified in AS 18.66.990 yields some odd results. And these odd results have significant consequences for Alaska's law of evidence, because Evidence Rule 404(b)(4) incorporates this wide-ranging statutory definition of "domestic violence". Because of this (as we explain in the next section of this opinion), Rule 404(b)(4) stands apart from its siblings, Rules 404(b)(2) and (b)(3).

### Our construction of Evidence Rule 404(b)(4)

■ We conclude that Rule 404(b)(4)—like its sibling provisions, Rules 404(b)(2) and (b)(3)—was intended to exempt certain evidence from Rule 404(b)(1)'s prohibition against propensity evidence. In prosecutions for crimes involving domestic violence, Rule 404(b)(4) authorizes the court to admit evidence of the defendant's other acts of domestic violence even though the sole relevance of those acts is to show that the defendant characteristically commits such acts, so that the defendant's character can be taken as circumstantial evidence that the defendant acted true to character during the episode being litigated.

### The relationship between Evidence Rule 402 and Evidence Rule 404

■ Evidence Rule 402 codifies two governing principles on which all the other rules of evidence are built. The first governing principle is that relevant evidence is presumptively admissible—*i.e.*, it is admissible unless some other provision of law limits or bars the evidence.[20] The second governing principle is that irrelevant evidence is not admissible.[21]

### a. Rule 402 itself does not bar character evidence, because character evidence can be relevant

■ Evidence of a person's character is often relevant. People make decisions every day based on their assessments of whether some person is characteristically truthful or untruthful, whether some person is easy-going or fractious and aggressive, whether some person can be trusted with money, etc.. Thus, under Evidence Rule 402, evidence of a person's relevant character trait is potentially admissible unless some other provision of law limits or bars this evidence.

The concept that character evidence can be relevant is openly acknowledged in Evidence Rule 404(a). Although Rule 404(a) declares that character evidence is generally barred, the rule expressly authorizes the use of character evidence for several purposes.

This same principle is also acknowledged in court decisions dealing with "propensity" evidence—evidence of a person's other bad acts when offered to prove that the person characteristically engages in such acts. The United States Supreme Court recognized the relevance of propensity evidence in *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948):

> [Evidence of a defendant's bad character] might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry [into character] is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so [persuade] them ... to prejudge one with a bad gen-

---

**20.** The first sentence of Evidence Rule 402 reads: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States or of this state, by enactments of the Alaska Legislature, by these [evidence] rules, or by other rules adopted by the Alaska Supreme Court."

**21.** The concluding sentence of Evidence Rule 402 reads: "Evidence which is not relevant is not admissible."

eral record and deny him a fair opportunity to defend [himself] against [the] particular charge.

*Michelson*, 335 U.S. at 475–76, 69 S.Ct. at 218. *See also Wigmore on Evidence* (Tillers rev'n 1983), § 54.1, Vol. 1A, pp. 1150–56.

This view of the matter is shared by the appellate courts of this state. In *Freeman v. State*, 486 P.2d 967, 972 (Alaska 1971), the Alaska Supreme Court declared that "it is commonly acknowledged that a person's character will frequently be relevant to the issue of his conduct on a particular occasion, [although] character evidence is normally inadmissible for this purpose." And in *Allen v. State*, 945 P.2d 1233, 1238 (Alaska App.1997), this Court explained that the traditional prohibition against propensity evidence

> was based, not on the theory that the defendant's character lacked relevance, but rather on the policy consideration that a jury might be tempted to relax the government's normal burden of proof if they were convinced that the defendant was a bad person[.]

See also our decision in *Velez v. State*,[22] which involved a defendant accused of "date rape" (*i.e.*, accused of inviting a woman out, then using threatening words and/or behavior to coerce her into having sex with him). At trial, the State offered testimony from two other women that Velez had engaged in similarly coercive behavior when they dated him.[23] This Court held that this evidence should have been rejected because the probative value of the evidence implicitly rested on the inference that Velez had a propensity to sexually assault his dating partners:

> Velez's activities with other women were marginally relevant to show how he conducted himself with each of his victims, ... but this is pure propensity evidence, absolutely forbidden by Evidence Rule 404(b). Thus, the state cannot offer evidence that Velez coerced [other women] to support an inference that he had a disposition to force his affections on unwilling women, and then [ask the jury to] infer from that disposition that he forced his affections on [the victim named in the indictment]. *De-*

*spite its relevance*, this evidence is absolutely precluded [by Evidence Rule 404(b)].

*Velez*, 762 P.2d at 1303–04 (emphasis added).

The Alaska Supreme Court recently expressed this same view of propensity evidence in *Hess v. State*, 20 P.3d 1121 (Alaska 2001). Speaking of evidence that the defendant had engaged in prior acts of sexual assault, the supreme court said:

> Most jurisdictions, including Alaska before the legislature enacted Rule 404(b)(3), ... considered propensity evidence to be so prejudicial that they exclude[d] it by rule.... [P]rior acts of sexual assault were considered so prejudicial ... that they were previously "absolutely precluded" as evidence of a defendant's reckless disregard [of the victim's lack of consent], *despite their undoubted relevance.*

*Hess*, 20 P.3d at 1128 (emphasis added).

Thus, even though many provisions of the evidence rules exclude character evidence, this is not done because of a supposed irrelevance of character evidence. Rather, it is done because of the risk that character evidence will mislead the jury or prompt the jury to decide the case on improper grounds.

*b. The distinction between relevant and irrelevant character evidence*

■ Although Rule 402 states that relevant evidence is presumptively admissible, the rule also states that irrelevant evidence is not admissible. These two principles govern any attempt to introduce character evidence under the various provisions of Evidence Rule 404. That is, *relevant* character evidence *may* be admissible, but *irrelevant* character evidence is *never* admissible.

How does one determine whether character evidence is relevant or irrelevant? Alaska Evidence Rule 401 defines "relevant" evidence as evidence that has some tendency to make the existence of a material fact either more or less likely. When assessing whether evidence of a defendant's character trait is relevant in a criminal trial, one must identify

---

**22.** 762 P.2d 1297 (Alaska App.1988).

**23.** *Id.* at 1298–99.

and examine the purported basis for inferring that this character trait does indeed make it more or less likely that the defendant committed the act or had the culpable mental state at issue in the litigation.

For instance, evidence of a person's past wrongdoing could conceivably be offered to establish that the person has a "general criminal propensity"—a general willingness to break the law. Under this theory, a person's willingness to violate societal rules in the past would be offered to prove that it is more likely that the person violated societal rules during the episode being litigated. Thus, a person's willingness to embezzle money might be offered to prove that the person is more likely a rapist, or a person's willingness to violate pollution regulations might be offered to prove that they drove recklessly or that they assaulted a neighbor.

We doubt whether such a "general criminal propensity" is relevant at all. It rests on the assertion that a person's willingness to break one sort of law makes it more likely that they are willing to break any law. This assertion is not self-evident; in fact, common experience tends to disprove it. Thus, evidence of a person's character offered for the purpose of establishing the person's "general criminal propensity" would seemingly be irrelevant.

A different theory of relevance could be argued if the person's past wrongdoing involved a violation of the same type of criminal statute as the alleged current offense. For instance, Evidence Rule 404(b)(3) states that when a defendant is charged with attempted sexual assault, evidence of the defendant's other acts of sexual assault can be offered to prove that the defendant more likely committed the current crime. The underlying assertion of relevance is that a person's willingness to commit sexual assault on other occasions tends to establish that they are more likely to have attempted to commit sexual assault on the current occasion.

On its face, this assertion of relevance is stronger than the assertion of "general criminal propensity". Even so, an assertion of "propensity to commit sexual assault" must be examined carefully. The Alaska statutes

defining sexual assault encompass many forms of conduct—from drunkenly groping a co-worker's breast at an office party, to date rape, to sexually assaulting a stranger on a running path. It might not be true that a defendant who is willing to engage in one of these forms of sexual assault is thereby more likely to have engaged in some other different type of attempted sexual assault. And if this assertion is not true, then the offered character evidence would not be relevant.

Character evidence has the greatest potential relevance when the defendant's past wrongdoing involves the same type of situational behavior as the current charge. For example, a person may have repeatedly run red lights, or repeatedly shoplifted, or repeatedly sexually abused pre-pubescent boys. Such circumstances give rise to a stronger underlying assertion that the defendant's other acts are predictive of what the defendant did on the occasion being litigated. Thus, this type of character evidence could be relevant—even though it might be barred by another evidence rule.

c. *The problem of relevance as it relates to the various provisions of Evidence Rule 404.*

As explained, Evidence Rule 402 states that irrelevant evidence is not admissible. We conclude that this principle limits the admission of the various sorts of character evidence governed by Evidence Rules 404(a) and 404(b).

Up until now, the relationship between Rule 402 and 404(a) has remained implicit—probably because the requirement of relevance is expressly set forth in Evidence Rule 404(a). The three numbered paragraphs of Rule 404(a) list several situations in which character evidence can be admitted to prove that a person acted true to character. But each paragraph requires the proponent of the evidence to show that the character trait under discussion is relevant to the decision of the case.

(Subsection (a)(1) of Evidence Rule 404 requires that the evidence pertain to "a relevant trait of character". Subsection (a)(2) requires this same showing of relevance.

The one provision of Rule 404(a)(2) that does not expressly use the word "relevance" is the provision that allows evidence of a victim's character for peacefulness "to rebut evidence that the victim was the first aggressor"—a situation in which the character evidence is plainly relevant. Finally, subsection (a)(3) authorizes the admission of character evidence under Evidence Rules 607, 608, and 609—in other words, evidence pertaining to a witness's character for truthfulness or untruthfulness. Again, this evidence is plainly relevant.)

We now turn to Evidence Rule 404(b). The original version of Rule 404(b)—what is now Rule 404(b)(1)—does not mention "relevance", but only because there is no need to mention it. Unlike Rules 404(a)(1), (a)(2), and (a)(3), Evidence Rule 404(b)(1) does not create an exception to Rule 404(a)'s general principle that character evidence is not admissible to prove that a person acted true to character. Indeed, Rule 404(b)(1) *restates* this principle. Under Rule 404(b)(1), the proponent of "other crimes" evidence must show that the evidence is relevant for some reason *other* than to prove character. Thus, there is no reason for Rule 404(b)(1) to distinguish between relevant and irrelevant character evidence—for the rule does not authorize the admission of *any* character evidence.

There was no need to actively examine the relationship between Evidence Rules 402 and 404(b) until the legislature amended Evidence Rule 404(b) by enacting Rules 404(b)(2), (b)(3), and (b)(4). As we explained earlier in this opinion, the legislature enacted these three rules for the purpose of exempting certain types of evidence from the ban on character evidence found in Rule 404(b)(1).

Evidence Rules 404(b)(2), (b)(3), and (b)(4) authorize the admission of character evidence. But none of these three rules expressly requires that the character evidence be relevant. The question therefore presents itself: Does Rule 402 govern the admission of evidence under Rules 404(b)(2), (b)(3), and (b)(4)? The answer is "yes".

The basic principles codified in Evidence Rule 402—the principles that relevant evidence is presumptively admissible, and that irrelevant evidence is not admissible—provide the foundation for every other provision of the evidence rules. In the *Federal Rules of Evidence Manual* by Saltzburg, Martin, and Capra, the authors emphasize this point with respect to the corresponding federal rule:

> Federal Rule of Evidence 402 is one of the most important and yet least invoked of the Evidence Rules. Rule 401 sets the definition of relevant evidence, but that Rule itself provides no authority for admitting evidence. Rule 403, the most invoked Evidence Rule, gives the Trial Court the discretion to exclude evidence if its probative value is . . . outweighed by the risk of prejudice, confusion of the jury, or delay. But like Rule 401, Rule 403 is not a positive [directive] for the admission of evidence. Rather, it is Rule 402 that provides the authority for admitting every piece of evidence that is ever admitted in a Federal Court.

Stephen A. Saltzburg, Michael M. Martin, and Daniel J. Capra, *Federal Rules of Evidence Manual* (8th ed.2002), Vol. 1, p. 402–2.

This point is forcefully stated in the Advisory Committee's "Note" to Federal Evidence Rule 402:

> The provisions [of Evidence Rule 402] that all relevant evidence is admissible, with certain exceptions, and that evidence which is not relevant is not admissible are "a presupposition [of] the very conception of a rational system of evidence." [James Bradley] Thayer, [A] *Preliminary Treatise on Evidence* [at the Common Law, p.] 264 (1898). [These principles] constitute the foundation upon which the structure of admission and exclusion rests.

(quoted in *Federal Rules of Evidence Manual*, Vol. 1, p. 402–11.)

Thus, the two foundational principles of Evidence Rule 402 govern the various types of character evidence addressed in Evidence Rules 404(b)(2), (b)(3), and (b)(4). *Relevant* character evidence is potentially admissible under these three rules, but *irrelevant* character evidence is not admissible at all. With this in mind, we return to our analysis of Rules 404(b)(2), (b)(3), and (b)(4).

Evidence Rule 404(b)(2) does not expressly mention "relevance", but its three foundational requirements are seemingly designed to ensure the relevance of any character evidence admitted under the rule. Rule 404(b)(2) requires the government to show that the defendant's other act occurred within the preceding ten years, that it involved misconduct similar to the offense currently charged, and that it involved either the same victim or a similar victim. In other words, Rule 404(b)(2) requires a showing that the character evidence offered against the defendant involves the same sort of situational behavior that is at issue in the current charge.

Rule 404(b)(3) does not contain this same type of limitation. The rule allows the government to offer evidence of a defendant's other sexual assaults if the defendant's culpable mental state is at issue in one of two specified ways (*i.e.*, if the defendant is charged with a completed sexual assault and relies on a defense of consent, or if the defendant is charged with an attempted sexual assault). The fact that Rule 404(b)(3) is limited to acts of sexual assault is some guarantee that the evidence of the defendant's past acts will be relevant. However, as we have already discussed, it is possible that a defendant's past acts of sexual assault could involve situations so different from the current charge that these acts have little or no relevance to the current charge. And if the past acts have no relevance, they will be inadmissible.

But the problem of relevance—or, more precisely, the problem of lack of relevance—is most squarely presented by Rule 404(b)(4). Evidence Rule 404(b)(4) incorporates the expansive definition of "domestic violence" codified in AS 18.66.990. Because of this, there

is little guarantee that evidence offered under Rule 404(b)(4) will be relevant to the charges being litigated.

For instance, a person who causes a traffic accident through criminal negligence and, by chance, happens to injure the child of a former high school sweetheart has committed a "crime involving domestic violence" as defined in AS 18.66.990.[24] Likewise, a person who engages in consensual sexual intercourse with an adult relative specified in the incest statute has committed a "crime involving domestic violence" as defined in AS 18.66.990.[25] Evidence Rule 404(b)(4) states that evidence of the traffic accident (*i.e.*, evidence of the defendant's negligent driving) and evidence of the defendant's act of incest are both admissible if the defendant is prosecuted for beating their spouse. Yet the defendant's negligent driving and the defendant's act of incest have no discernible relevance to the assault charge.

The Department of Law appears to have recognized this problem when they proposed Rule 404(b)(4) to the legislature. As we explained earlier in this opinion, when the Senate Judiciary Committee asked about the contemplated scope of the new rule, the Department of Law's representative replied that evidence of the defendant's other acts of domestic violence "could not automatically be introduced". Rather, "the State would [still] have to make a preliminary showing to the court that the information was ... relevant".[26]

■ But even if the legislative history did not contain this clarifying comment, we would still hold that Evidence Rule 402 governs all evidence offered under Evidence Rule 404(b)(4). Rule 404(b)(4) authorizes the

---

**24.** A person who causes physical injury to another by means of a dangerous instrument, acting with criminal negligence, is guilty of fourth-degree assault under AS 11.41.230(a)(2). Because this offense is a crime against the person codified in AS 11.41, it constitutes an act of "domestic violence" as defined in AS 18.66.990(3)(A). And under AS 18.66.990(5)(C) and (H) (in combination), the motorist and the child of the motorist's former sweetheart are "household members".

**25.** Incest, defined in AS 11.41.450(a), consists of engaging in consensual sexual penetration with

(1) an ancestor or descendant, (2) a sibling, or (3) an aunt, uncle, niece, or nephew by blood. Because incest is a crime against the person codified in AS 11.41, it constitutes an act of "domestic violence" as defined in AS 18.66.990(3)(A). And because all of the people specified in the incest statute are related within the fourth-degree of consanguinity, they are "household members" under AS 18.66.990(5)(E).

**26.** 1997 Senate Judiciary Committee Minutes (April 9th), Tape 97–26, Log No. 245.

admission of evidence concerning a defendant's other acts of "domestic violence" (as defined in AS 18.66.990) for the purpose of proving the defendant's character. But Rule 402 limits the scope of Rule 404(b)(4), forbidding the introduction of this character evidence unless (1) the trait of character under discussion is relevant to the current charge against the defendant, and (2) the defendant's other acts are in fact relevant to establishing this trait of character.

Thus, if a man is prosecuted for beating his wife, evidence of other assaults on his wife or other girlfriends might be admissible under Evidence Rule 404(b)(4) because these other assaults arguably tend to prove a relevant trait of the defendant's character. But evidence of the man's reckless driving or incest would be excluded by Evidence Rule 402 (even though these acts might qualify as "crimes involving domestic violence" under AS 18.66.990), because these acts are not relevant to any pertinent character trait of the defendant.

(This is not to say that a defendant's acts of reckless driving or incest could never be relevant in a domestic assault prosecution. For example, the State's evidence might show that the defendant assaulted his wife during an argument that began when she discovered his act of incest or complained of his reckless driving. But in such circumstances, the evidence would not be offered under Rule 404(b)(4) to prove a trait of the defendant's character. Rather, the evidence would be offered under Evidence Rule 404(b)(1) because it would have relevance aside from proving character.)

*The relationship between Evidence Rule 403 and Evidence Rule 404(b)(4)*

Now that we have clarified that Evidence Rule 404(b)(4) does not authorize the admission of irrelevant evidence, we next examine a trial judge's duties under Evidence Rule 403 when the State offers *relevant* evidence of the defendant's past acts of domestic violence under Rule 404(b)(4).

■ Even when evidence of a defendant's other acts of domestic violence is relevant and admissible under Rule 404(b)(4), Evidence Rule 403 authorizes a trial judge to exclude the evidence if the probative value of the evidence is outweighed by the danger that it will engender unfair prejudice, confuse the issues, or mislead the jury.[27]

When the Department of Law asked the legislature to enact Evidence Rule 404(b)(4), it justified its request by asserting that a new rule was needed to deal with the problem that prosecutors face when the alleged victim of domestic violence either recants or refuses to testify. In such situations, evidence of the defendant's other acts of domestic violence toward the victim or other members of the family could be important to explain the victim's recantation or the victim's reluctance to provide testimony against the defendant.

However, it is not clear why a new rule of evidence was needed to deal with this problem. In such situations, evidence of the defendant's other threats and acts of violence toward the victim and other family members would seemingly be admissible under Evidence Rule 404(b)(1)—because, in these circumstances, the evidence would have a case-specific relevance aside from its tendency to prove something about the defendant's character.

See, for instance, our decision in *Russell v. State*, 934 P.2d 1335 (Alaska App.1997), a case in which the defendant was charged with raping his estranged wife. We held that evidence of the defendant's prior acts of violence toward his wife was admissible under Evidence Rule 404(b)(1) to explain why she agreed to accompany the defendant to a hotel and did not forcibly resist his assault. "Such evidence is relevant to explain why one person might fear another person or might submit to another person's will." *Id.* at 1341.

Be that as it may, the legislature enacted a rule that is considerably broader than this offered justification. As we explained earlier

---

**27.** Evidence Rule 403 states: "Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

in this opinion, Rule 404(b)(4) is not limited to instances in which the purported victim of domestic violence does not testify in support of the government's case; instead, the rule applies to all prosecutions for crimes of domestic violence. Moreover, the admission of "other acts" evidence under Rule 404(b)(4) is not limited to establishing a pattern of physical abuse committed against the same victim or members of the victim's family, or against similar victims. Instead, Rule 404(b)(4) authorizes evidence of any act of domestic violence committed against any victim. Finally, by incorporating the definition of "domestic violence" found in AS 18.66.990, Rule 404(b)(4) authorizes the admission of evidence concerning acts that may have little relevance to the issues being litigated.

All of these factors demonstrate how important it is for trial judges to carefully apply Evidence Rule 403 when the State offers evidence of a defendant's other acts of domestic violence under Evidence Rule 404(b)(4).

Bingaman suggests that, after our decision in *Wardlow v. State*, 2 P.3d 1238 (Alaska App.2000), Evidence Rule 403 has become a hollow protection—that a trial judge can no longer do anything of substance to protect a defendant from the unfair prejudice of other crimes evidence.

In *Wardlow*, we addressed the relationship between Rule 403 and Rule 404(b)(4)'s sibling provision, Rule 404(b)(3) (the subsection dealing with sexual assault). We explained that, because the legislature has amended Rule 404(b) to allow the introduction of character evidence in particular circumstances, it is no longer improper for the jury to use evidence of a defendant's other acts as circumstantial evidence that the defendant is more likely guilty of the act currently charged:

> When evidence of other sexual assaults and attempted sexual assaults is admissible under Rule 404(b)(3), and when the probative value of this evidence is weighed against its potential for unfair prejudice, the trial judge's assessment of "unfair prejudice" no longer includes the fact that the evidence tends to prove the defendant's propensity to engage in sexual assault.... [T]he legislature enacted Rule

404(b)(3) precisely because it wanted evidence of other assaults to be admissible to prove a defendant's assaultive propensity. This legislative purpose would be defeated if Rule 403 were interpreted to make the other crimes evidence "unfairly prejudicial" just because the evidence was relevant in the way the legislature intended.

*Wardlow*, 2 P.3d at 1247.

A few months later, in *Fuzzard v. State*, 13 P.3d 1163, 1166–67 (Alaska App.2000), we held that this same analysis applied to Rule 404(b)(4).

In other words, Evidence Rules 404(b)(2), (b)(3), and (b)(4) were enacted to allow the State to introduce evidence of a defendant's other acts in order to demonstrate that the defendant has a particular character trait, and then to use this character trait as circumstantial evidence that the defendant acted true to character during the episode being litigated. It would defeat the legislature's objective if this evidentiary purpose were declared improper under Evidence Rule 403. Accordingly, when evidence of a defendant's other acts is relevant and admissible under one of these three subsections of Rule 404(b), the trial judge is not authorized to exclude the evidence under Rule 403 merely because the jury may use the defendant's other acts as circumstantial evidence that the defendant more likely committed the same kind of act during the episode being litigated.

Nevertheless, Evidence Rule 403 remains an important protection against the misuse of this evidence. The trial judge must still ensure that the defendant is tried for the crime currently charged—not for the things that the defendant might have done on other occasions, and not for the kind of person that the defendant might be.

If the jury votes to convict the defendant, they must do so because the government has proved the current charge beyond a reasonable doubt. Despite the legislature's expansion of the role of character evidence, it remains improper for the jury to convict a defendant because the jurors conclude that, regardless of whether the defendant is guilty of the crime currently charged, the defen-

dant deserves to be punished for acts done on other occasions. Similarly, it remains improper for the jury to convict the defendant because the jurors conclude that, regardless of whether the defendant is guilty of the crime currently charged, the defendant has done similar things in the past and thus the defendant should be imprisoned to prevent more such crimes in the future.

It also remains improper for the jury to conclude that, because the defendant is dangerous, wicked, or despicable, the defendant is not entitled to the normal protections of the law. And finally, it is improper for the jurors to act like the villagers in Aesop's fable, "The Boy Who Cried Wolf": that is, it is improper for the jurors to conclude that, because the defendant has done similar things before, there is no need to spend much time investigating the current allegation—and no need to hold the government to its normal burden of proving the present allegation beyond a reasonable doubt.

Depending on the circumstances, the defendant's other bad acts may be relevant circumstantial evidence that the defendant committed the act currently charged against him. But the law continues to insist that the jury's decision be based on whether the government has indeed proved the currently charged crime beyond a reasonable doubt.

 Evidence Rules 404(b)(2), (b)(3), and (b)(4) allow the State to offer evidence of the defendant's other acts for a limited purpose: as circumstantial evidence of the defendant's likely conduct during the episode being litigated. If the trial judge concludes that the jury probably can not confine its consideration of the other acts evidence to that limited purpose, or if the judge concludes that the other-acts evidence will prejudice the fairness of the trial for any other reason listed in Evidence Rule 403, the trial judge has the authority to exclude the evidence.

Here, then, are the factors that a trial judge must consider when deciding whether evidence of a defendant's other acts can be admitted under Evidence Rule 404(b)(4): [28]

 1. How strong is the government's evidence that the defendant actually committed the other acts?

 2. What character trait do the other acts tend to prove?

 3. Is this character trait relevant to any material issue in the case? How relevant? And how strongly do the defendant's other acts tend to prove this trait?

 In answering these questions, a trial judge should analyze whether the defendant's other acts demonstrate the same type of situational behavior as the crime currently charged. As we discussed earlier in this opinion, evidence of another act of domestic violence offered under Rule 404(b)(4) will generally have a probative force proportional to the similarity between this other act and the act that the defendant is currently charged with committing. Further, the trial judge should take into account the recency or remoteness of the other act. On this point, see the supreme court's decision in *Freeman v. State*, 486 P.2d 967, 978–79 (Alaska 1971) (holding that it was error to admit proof of the defendant's prior sex offense, in part because the prior offense was committed almost twenty years before, when the defendant was a teenager, and because the prior offense involved quite different facts—an eighteen-year-old boy making improper sexual advances to a fourteen-year-old girl in a car).

 4. Assuming that the offered character evidence is relevant to a material issue, how seriously disputed is this material issue? Does the government need to offer more evidence on this issue? And is there less prejudicial evidence that could be offered on this point? In other words, how great is the government's need to offer evidence of the defendant's other acts? Or, if evidence of one or more other acts has already been admitted, how great is the government's need to offer *additional* evidence of the defendant's other acts?

**28.** We have taken many of these factors from the Tenth Circuit's decision in *United States v. Enja-* *dy,* 134 F.3d 1427, 1433 (10th Cir.1998).

5. How likely is it that litigation of the defendant's other acts will require an inordinate amount of time?

6. And finally, how likely is it that evidence of the defendant's other acts will lead the jury to decide the case on improper grounds, or will distract the jury from the main issues in the case?

*Because Evidence Rules 402 and 403 limit the admission of evidence under Evidence Rule 404(b)(4), Rule 404(b)(4) does not deny a defendant due process of law*

In prior cases, we have held that the introduction of character evidence against a criminal defendant does not, of itself, deprive the defendant of due process of law. In *Allen v. State*, 945 P.2d 1233, 1238–39 (Alaska App.1997), we rejected a due process challenge to Alaska Evidence Rule 404(a)(2), which authorizes the admission of reputation and opinion evidence concerning a defendant's character for violence. In *Wardlow v. State*, 2 P.3d 1238, 1248 (Alaska App.2000), and *McGill v. State*, 18 P.3d 77, 81 (Alaska App.2001), we rejected due process challenges to Alaska Evidence Rule 404(b)(3), which authorizes the admission of evidence of a defendant's prior acts of sexual assault for the purpose of proving the defendant's character. And in *Fuzzard v. State*, 13 P.3d 1163, 1166–67 (Alaska App.2000), we rejected a similar due process challenge to Alaska Evidence Rule 404(b)(4).

In *Allen, Wardlow*, and *Fuzzard*, we relied in large measure on the fact that Evidence Rule 403 is available to forestall the misuse of the rules that authorize the admission of character evidence.[29] It is true that Evidence Rule 404(b)(4), as written, seemingly allows the State to introduce evidence that has no purpose (or little purpose) other than to incite the jury against the defendant— evidence that is likely to distract the jurors from their duty to decide the defendant's guilt according to law. However, as we have explained here, Evidence Rules 402 and 403 limit the scope of Evidence Rule 404(b)(4). We are convinced that if Evidence Rules 402 and 403 are applied correctly, the evidence admitted under Rule 404(b)(4) will not deprive a defendant of the due process of law guaranteed by the constitution.

We therefore re-affirm our rulings in *Allen, Wardlow*, and *Fuzzard*—our conclusion that the various provisions of Evidence Rule 404 which authorize the admission of character evidence against a defendant do not violate the due process clause.

*Additional comments on a trial judge's duty under Evidence Rule 403*

As we have explained, character evidence can be relevant. Moreover, it is not fundamentally unfair to use character evidence for the limited purpose of circumstantially suggesting the likelihood that the defendant acted true to character during the episode being litigated. However, whenever character evidence is introduced for this purpose, there is a risk that it will engender the types of unfair prejudice that we have discussed in this opinion.

This danger may perhaps be low when the character evidence consists merely of reputation or opinion testimony, but it is substantial when the character evidence consists of testimony concerning specific bad acts. As the Commentary to Alaska Evidence Rule 405(b) explains:

Of the three methods of proving character ..., evidence of specific instances of conduct is the most convincing [and, at] the same time[,] it poses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time.

Commentary to Evidence Rule 405(b), first paragraph.

Because of the danger posed by proving a defendant's character through evidence of specific acts, we conclude that whenever the government offers evidence of a defendant's other bad acts under Evidence Rules 404(b)(2), (b)(3), or (b)(4), trial judges *must* conduct a balancing under Evidence Rule 403 and *must* explain their decision on the record.

In addition, when the trial judge decides to allow the State to introduce evidence

**29.** *Allen*, 945 P.2d at 1239; *Wardlow*, 2 P.3d at 1248; *Fuzzard*, 13 P.3d at 1166–67.

under Rules 404(b)(2), (b)(3), or (b)(4), the judge must instruct the jury that evidence of the defendant's other acts is never sufficient, standing alone, to justify the defendant's conviction. The jury must understand that it is the government's burden to prove beyond a reasonable doubt that the defendant committed the crime currently charged—and that this can not be done simply by showing that the defendant has committed similar acts in the past.[30]

*Conclusion: Analysis of the evidence presented at Bingaman's trial under the rules we have announced here*

■ As explained toward the beginning of this opinion, the State introduced evidence of approximately 68 bad acts committed by Bingaman (other than the four crimes currently charged against him).

We acknowledge that many of the other bad acts revealed by the State's evidence were potentially admissible under Evidence Rule 404(b)(1) to explain the relationship between Bingaman and K.H. and her children—to explain why K.H. and her children were afraid to report or otherwise respond to Bingaman's violence and abuse until K.H. ended her relationship with Bingaman and she and her children stopped sharing a residence with him. In addition, to the extent that Bingaman's other acts were similar to the ones with which Bingaman was charged in the present case, they were relevant to show that he characteristically engages in such acts—thus making it more likely that he acted true to character during the episodes being litigated.

But Bingaman's trial judge failed in his role as gate keeper under Evidence Rule 403. The trial judge failed to exclude evidence of a single bad act offered by the State, even though many of these acts had little or nothing to do with K.H. or her children, and had little or nothing to do with the allegations that Bingaman had physically assaulted K.H. or had sexually abused K.H.'s daughter.

The evidence of Bingaman's dozens of other bad acts overtook and overwhelmed the State's proof concerning the four crimes charged in the indictment. By inaction, the trial judge failed to properly exercise the discretion required by Evidence Rule 403.

For these reasons, the judgement of the superior court is REVERSED.

(Given our decision that Bingaman is entitled to a new trial, we need not address the other issues raised by Bingaman in this appeal.)

---

**30.** See *United States v. McHorse,* 179 F.3d 889 (10th Cir.1999), a case dealing with Federal Evidence Rule 414(a). The Tenth Circuit approvingly noted that "[o]n more than one occasion" the trial judge "instruct[ed] the jury that evidence of uncharged acts of sexual abuse were not suffi-

cient to prove the defendant guilty of the crimes charged in the indictment and [that the defendant] was not on trial for any act, conduct, or offense not charged in the indictment". *Id.* at 896–97.