Steven L. BENNETT, Appellant,

v.

MUNICIPALITY OF ANCHORAGE,
Appellee.

No. A–10255.

Court of Appeals of Alaska.

April 24, 2009.

Michael B. Logue, Gorton, Logue, and Graper, Anchorage, for the Appellant.

Hanley Rebecca Smith, Assistant Municipal Prosecutor, and James N. Reeves, Municipal Attorney, Anchorage, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

COATS, Chief Judge.

Steven L. Bennett was convicted of assaulting his wife. On appeal, he argues that the district court erred by admitting testimony about a previous incident involving his wife. Bennett argues that this prior incident should not have been admitted as a "crime of domestic violence"—because, according to Bennett, he did not assault his wife in the earlier incident, but rather injured her in self-defense. Bennett also argues that the court should have ordered the Municipality to produce more evidence of this prior incident before finding that it was a crime of domestic violence. Having reviewed the record, we conclude that the Municipality offered enough evidence that this incident was a crime of domestic violence for the court to admit the evidence under Evidence Rule 404(b)(4).

Bennett also claims that the district court erred by admitting this evidence without explaining what character trait the evidence was relevant to prove. But the record shows that the district court admitted the evidence for the reason articulated by the municipal prosecutor: because the evidence was relevant to prove Bennett's propensity to assault his wife. We therefore affirm Bennett's conviction.

### Facts and proceedings

On the afternoon of April 21, 2008, Anchorage Police Officers Horase Snyder and Roger Billiet were dispatched to the home of Steven and Celeste Bennett on a report of a domestic disturbance or assault. As the officers

approached the Bennetts' house, Officer Billiet noticed that there was women's clothing in the trash cans. The officers contacted Steven Bennett, who told them he had been in an argument with his wife, Celeste, over her use of alcohol and sleeping pills, and that Celeste had attacked him and he had defended himself by grabbing her and throwing her out of the house. Bennett admitted that in the course of this argument he had pulled the closet door off its tracks and thrown the phone against the wall, leaving a hole in the wall. The police documented scratches on Steven Bennett's face and hand.

When the police contacted Celeste Bennett, she was crying and shaking. She told the police that her husband had tried to smother her. Celeste Bennett had bruises and scrapes on her arms.

The officers arrested Steven Bennett, and he was ultimately convicted of assault,[1] family violence [2] (because the incident occurred in front of the couple's young daughter) and malicious destruction of property,[3] for throwing his wife's clothes out into the yard, damaging the closet door, and throwing the phone against the wall, breaking the phone and leaving a hole in the wall.

Before trial, the Municipality asked the district court to admit evidence under Evidence Rule 404(b)(4) that Steven Bennett had assaulted his wife once before, in 2005. Bennett's attorney objected to the admission of this evidence, arguing that the prior incident was not an act of domestic violence but of self-defense. The attorney said that Celeste Bennett was very intoxicated during the earlier incident, that she hit Steven, and that he hit her back.

District Court Judge Alex M. Swiderski ruled that the Bennetts could both testify about the 2005 incident. But because he did not want a mini-trial on the prior incident that would distract the jury from the charged offenses, Judge Swiderski precluded the parties from offering any other evidence on this incident—although he indicated that either party could make an application to admit

additional evidence if the party believed there was "blatant perjury concerning an objective fact."

At trial, Celeste Bennett testified that on the day of the offense charged in this case, her husband was angry and drinking, and they were arguing. She started to call the police, but Steven took the phone and threw it against the wall repeatedly until the phone broke and there was a hole in the wall. Then he started to scream at her and he held her down by her throat and put his hand over her mouth and nose so she couldn't breathe. When she wedged her hand between his hand and her face, her wedding ring cut him, and he smeared the blood on his face. Then he pushed her down to the floor and hit her in the head a few times, then hit her head against the wall. Celeste Bennett testified that she told her husband that their young daughter was watching, and he grabbed the daughter and threw her out of the room. She testified that her husband then threw her over the footboard of the bed, grabbed her clothes out of the closet, and left the room.

Celeste Bennett also testified about the 2005 incident. She said both she and Steven were in the military at the time, that they had both been drinking, and that she was highly intoxicated. They argued, and during this argument she told Steven that he was pathetic and just like his father. Steven Bennett then knocked her to the ground and hit her repeatedly on the side of her face with the balls of his hands, and choked her. She said she ended up with two black eyes and bruises around her neck, and that the blood capillaries in her right eye were broken. Celeste Bennett said that after she called the sergeant in charge to pick her up, Steven told her, "if he was going down, that I was going down too," and he injured himself by hitting his head against the thermostat.

Steven Bennett gave a different account of both incidents. He said on the day at issue in the present case, he and his wife were arguing and that she "flew off the handle"

---

**1.** Anchorage Municipal Code (AMC) § 8.10.010.-B.1.

**2.** AMC § 8.10.050.

**3.** AMC § 8.20.010.

when he threatened to take custody of the children. She tried to claw his face, so he grabbed her by the arms and got her out the door. He said he might have put his palm over her mouth while he was struggling with her. He denied punching her in the head repeatedly and banging her head against the wall. He conceded that the closet door fell off the track as he was pulling her clothes out of the closet and throwing them outside. He said he threw the phone against the wall when he was alone in the room, because he was trying to call 911 and the battery was dead. He denied throwing his daughter out of the room; he said he took her by the hand and led her out.

As for the 2005 incident, Steven Bennett testified that he and his wife were fighting and that she became enraged and tried to gouge his face. He slapped her, but she kept coming at him. He said he slapped her three or four times, and that she ended up with two black eyes, broken capillaries in one of her eyes, and some bruising on her arm where he grabbed her.

Steven Bennett also testified to three other incidents in which his wife struck him without provocation. Celeste Bennett admitted to two of these incidents, although she said she was provoked by things her husband said. She testified that her husband did not hit her back on those two occasions.

*Why the district court properly admitted evidence of the 2005 incident*

Bennett argues that Judge Swiderski erred by admitting testimony about the 2005 incident under Evidence Rule 404(b)(4) because there was insufficient evidence that the

prior incident was a crime involving domestic violence.

■■■ As a general rule, evidence of a defendant's other crimes and bad acts may not be offered at trial to prove that the defendant has a propensity to commit similar acts.[4] But when the charged offense is a crime of domestic violence as defined in AS 18.66.990, Evidence Rule 404(b)(4) specifically authorizes courts to admit evidence of the defendant's other crimes of domestic violence.[5] The jury may rely on that evidence in deciding if the defendant has a character to commit crimes of that nature, and, if so, whether the defendant acted true to that character in the incident being litigated.[6] Because of the danger that juries will be unduly prejudiced by evidence of other bad acts, in *Bingaman v. State*[7] we outlined a number of factors trial courts must consider in deciding whether to admit this evidence:

(1) How strong is the government's evidence that the defendant actually committed the other acts?

(2) What character trait do the other acts tend to prove?

(3) Is this character trait relevant to any material issue in the case? How relevant? And how strongly do the defendant's other acts tend to prove this trait? [8]

■■■ In *Bingaman* we explained that, in assessing the probative force of bad-acts evidence, trial judges should consider the recency or remoteness of the other bad act, as well as the similarity of the other act and the charged act.[9] If the court determines that the character trait the government seeks to prove is relevant to a material issue in the case, the court should consider how seriously

---

4. Alaska R. Evid. 404(b)(1) provides in pertinent part:

Evidence of other crimes, wrongs, or acts is not admissible if the sole purpose for offering the evidence is to prove the character of a person in order to show that the person acted in conformity therewith.

5. Alaska R. Evid. 404(b)(4) provides:

In a prosecution for a crime involving domestic violence or of interfering with a report of a crime involving domestic violence, evidence of other crimes involving domestic violence by the defendant against the same or another person or

of interfering with a report of a crime involving domestic violence is admissible. In this paragraph, "domestic violence" and "crime involving domestic violence" have the meanings given in AS 18.66.990.

6. *Bingaman v. State*, 76 P.3d 398, 408, 415 (Alaska App.2003).

7. 76 P.3d 398.

8. *Id.* at 415.

9. *Id.*

disputed that material issue is and how necessary the evidence is to prove the government's case.[10] And the court should consider how likely it is that litigation of the defendant's other acts will take an inordinate amount of time, distract the jury from the main issues of the case, and lead the jury to decide the case on improper grounds.[11]

Bennett argues that Judge Swiderski should have excluded evidence of the 2005 incident under the first *Bingaman* factor, which required the court to consider the strength of the evidence that Bennett committed the bad act.[12] He argues that the Municipality presented insufficient evidence that the prior act was an act of domestic violence, and that Judge Swiderski, by admitting the evidence, "failed in his role as gate keeper." In support of this claim, Bennett cites *Lerchenstein v. State*[13] for the general presumption in Rule 404(b) against the admission of propensity evidence.

■ Bennett misconstrues the trial court's role under *Bingaman*. Evidence Rule 404(b)(4) provides that, in a prosecution for a crime involving domestic violence, "evidence of [the defendant's] other crimes involving domestic violence ... against the same [person] or another person ... *is admissible*."[14] Rule 404(b)(4) thus exempts evidence of a defendant's other acts of domestic violence from the general presumption against the admission of propensity evidence.[15] The admission of evidence of other acts of domestic violence is still limited by Evidence Rule 402, which states that irrelevant evidence is not admissible, and Evidence Rule 403, which requires courts to exclude evidence if its probative value is outweighed by the danger that it will engender unfair prejudice, confuse the issues, or mislead the jury.[16] The *Bingaman* factors simply guide trial courts in applying these rules of evidence in cases in which the government seeks to admit evidence of a defendant's other crimes or bad acts.[17]

In this case, Bennett does not dispute that a prior act of violence occurred between him and his wife Celeste—he only disputes that it was an assault. He argues that evidence of this prior incident should have been excluded because it had no relevance to prove his propensity to assault his wife.

■ When the relevance of evidence of a prior act of domestic violence hinges on resolution of a factual dispute as to the occurrence or nature of the prior act, Evidence Rule 104(b) governs the determination of this preliminary fact. That rule provides:

> When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.[18]

The commentary to this rule explains that, as long as there is enough evidence for a reasonable juror to find the fact established, the dispute must be submitted to the jury:

> The judge makes a preliminary determination whether the foundation evidence is sufficient to support a finding of fulfillment of the condition. If so, the item is admitted. If after all the evidence on the issue is in, pro and con, the jury could reasonably conclude either that fulfillment of the condition is or is not established, the issue is for them.[19]

■ In this case, the Municipality offered sufficient evidence for a reasonable juror to conclude that the 2005 incident was an act of domestic violence: Celeste Bennett testified that, after she insulted Steven during an argument, he knocked her to the ground, hit

---

10. *Id.*

11. *Id.* at 416.

12. *See id.* at 415.

13. 697 P.2d 312 (Alaska App.1985).

14. Emphasis added.

15. *Bingaman,* 76 P.3d at 401.

16. *Id.* at 410–13.

17. *Douglas v. State,* 151 P.3d 495, 503 (Alaska App.2006).

18. Alaska R. Evid. 104(b).

19. Evidence Rules Commentary, Rule 104(b), at 486 (2008–09).

**1118**

her repeatedly on the side of her face and choked her, leaving her with two black eyes, bruises on her neck, and broken blood capillaries in her right eye.

Once the court made the preliminary finding of sufficient evidence required by Evidence Rule 104(b), the strength of the Municipality's evidence of the prior act was just one factor for Judge Swiderski to consider in balancing the probative value of the evidence against the risk that Bennett would be unfairly prejudiced.[20] Judge Swiderski determined that the evidence should not be excluded under Evidence Rule 403; it then became the jury's duty to evaluate the credibility of the Bennetts' conflicting testimony on this incident, and to decide what weight, if any, to give the evidence in assessing Bennett's guilt of the charged assault.[21]

We conclude that Judge Swiderski did not abuse his discretion in concluding that evidence of the 2005 incident was more probative than prejudicial, and in admitting the evidence to prove Steven Bennett's propensity for domestic violence. Steven and Celeste Bennett both testified that on the night of the 2005 incident they were intoxicated, that they had a verbal argument that escalated to a physical altercation, that Steven struck Celeste in the face multiple times, and that Celeste ended up with two black eyes. The only dispute in their testimony was whether Steven inflicted the injuries in self-defense.

The offense in this case was similar, in that Steven had been drinking, a verbal argument about the marriage turned violent, and Steven later asserted that Celeste attacked him and that he injured her defending himself. The 2005 incident thus had some tendency to make more or less probable Steven Bennett's propensity to assault his wife and then claim he acted in self-defense.[22] This character trait was material to the Municipality's case because Bennett's intent—that is, whether he

intended to assault Celeste, or instead injured her in self-defense—was the only disputed issue during the trial of this charge. Given the limits the court placed on this evidence, there was little risk the jury would be distracted from its main task and convict Bennett on improper grounds.

■ Bennett claims that there was additional evidence on the 2005 incident—witnesses and military investigative reports—that was relevant to whether he assaulted his wife in 2005. He argues that Judge Swiderski should have required the Municipality to produce this additional evidence in its offer of proof. But the court's only duty was to evaluate the relevance and potential prejudice of the evidence based on the record before it. *Bingaman* imposed no independent duty on the court to order the Municipality to produce all available evidence regarding the 2005 incident or to otherwise investigate the credibility of Celeste Bennett's account of that incident. If Bennett believed other evidence rebutted Celeste Bennett's testimony, he could have offered it. In this context, it is worth noting that Judge Swiderski invited Bennett to offer additional evidence on the 2005 incident in his offer of proof—and at trial, if the additional evidence was necessary to rebut Celeste Bennett's testimony.

Bennett also complains that Judge Swiderski failed to address the second *Bingaman* factor—"What character trait do the other acts tend to prove?"[23] But when the parties discussed this issue, the Municipality argued that the evidence was relevant to prove Bennett's propensity to be violent with his wife. Bennett argued that the evidence had no relevance to prove this character trait because he acted in self-defense. By admitting the evidence under Rule 404(b)(4), Judge Swiderski resolved this dispute in the Munic-

**20.** *See Bingaman,* 76 P.3d at 415.

**21.** *See Huddleston v. United States,* 485 U.S. 681, 690, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988) (trial court's responsibility under Rule 404(b) is to examine all the evidence and, without weighing credibility, decide if the jury could find by a preponderance of the evidence that the prior bad act occurred).

**22.** *See* Alaska R. Evid. 401:

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

**23.** *See Bingaman,* 76 P.3d at 415.

ipality's favor—that is, he implicitly adopted the Municipality's view that the evidence was relevant to show Bennett's character for assaulting his wife during domestic arguments, and that the 2005 incident was therefore relevant circumstantial evidence of Bennett's likely conduct during the episode being litigated.[24]

In *Bingaman* we declared that whenever the government offers evidence of a defendant's other bad acts, the trial court must engage in Rule 403 balancing, and must explain its decision on the record.[25] To the extent Bennett is arguing that Judge Swiderski failed in this duty because he did not state on the record what character trait the 2005 incident was admitted to prove, that

claim fails. *Bingaman* does not hold that trial judges must, in every case, explain their analysis of each and every *Bingaman* factor.[26] In this case, the record viewed as a whole leaves no doubt what character trait the 2005 incident was admitted to prove.

*Conclusion*

We AFFIRM Bennett's conviction.

---

24. *See Riggins v. State,* 101 P.3d 1060, 1063 (Alaska App.2004) (upholding admission of evidence of defendant's two prior assaults on his girlfriend, noting that they were relevant to show the defendant's "character for using violence against [his girlfriend]").

25. *Bingaman,* 76 P.3d at 416; *see also Douglas,* 151 P.3d at 503.

26. *Bingaman,* 76 P.3d at 416–17; *cf. Douglas,* 151 P.3d at 502–03.