John LEOPOLD, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10556.

Court of Appeals of Alaska.

April 13, 2012.

As Corrected on Rehearing May 25, 2012.

Andrew Steiner, Attorney at Law, Bend, Oregon, for the Appellant.

Eric A. Ringsmuth, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and John J. Burns, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

BOLGER, Judge.

John Leopold was convicted of first-degree sexual assault, second-degree sexual assault, and incest for the sexual assault of his sister, J.L. On appeal, Leopold challenges the court's decision to admit several hearsay statements and to admit evidence of a prior sexual assault conviction. We conclude that the superior court's evidentiary rulings were generally reasonable and that any errors were harmless. Leopold also asserts that his sentence is excessive, but we conclude that the superior court's sentencing decision was not clearly mistaken.

### Background

On February 26, 2008, John Leopold invited his sister, J.L., to a party at his house in Alakanuk. Other guests at the party included another of Leopold's sisters, J.L.'s two children, and J.L.'s boyfriend, James Ayunerak. The guests at the party consumed home brew. Everyone ultimately left the house except for Leopold, J.L., and her children.

At some point, J.L. fell asleep. The next thing J.L. remembered was waking up with Leopold on top of her. J.L. told Leopold to stop and unsuccessfully attempted to push him off with her hands and feet. When J.L. woke up again, it was around eight in the morning. J.L. found her underwear on the floor, but could not recall how her underwear was removed.

Around nine o'clock, J.L. went next door to the house of her sister. J.L. informed her sister that Leopold had raped her. J.L. called James Ayunerak, who took her to the local health aide. On the way to the clinic, J.L. informed Ayunerak that Leopold raped her.

At the clinic, J.L. was examined by health aide Marlene Ayunerak. J.L. told Marlene that "she got beat up and raped" by Leopold that morning. Shortly after J.L.'s visit to the clinic, she was flown to Bethel for treatment.

Alaska State Trooper John Williamson spoke with J.L. over the phone before she flew to Bethel. When Williamson asked J.L. whether Leopold penetrated her, she said yes and that she tried to defend herself.

At the hospital in Bethel, J.L. was examined by Colleen Palacios, a sexual assault nurse examiner. J.L. told Palacios that her body was "achy" all over and that her genitalia were sore. J.L. had vaginal bruising that Palacios indicated was consistent with blunt force contact to that area.

Palacios also took a vaginal sample from J.L. DNA testing of the sample revealed DNA consistent with both J.L. and Leopold.

Leopold was indicted on charges of first-degree sexual assault, second-degree sexual assault, and incest. The jury ultimately convicted Leopold of all three counts. Superior Court Judge Leonard Devaney III sentenced Leopold to a composite sentence of 109 years with ten years suspended. Leopold now appeals.

### Discussion

*The court did not err when it admitted evidence of Leopold's prior sexual assault.*

■ Prior to trial, the State gave notice of its intent to offer evidence of Leopold's prior bad acts pursuant to Alaska Evidence Rule 404(b). One of the acts the State offered was an incident that occurred in November 1987. Leopold's aunt, R.R., was sleeping on the floor when Leopold entered her residence and began to rape her. R.R. indicated she struggled and screamed, but Leopold held her arms and covered her mouth. When village police arrived at R.R.'s residence, they observed Leopold still lying on top of R.R. Leopold ultimately pleaded no contest to a charge of second-degree sexual assault.

The prosecutor argued that Leopold opened the door to the admission of this prior sexual assault because the defense took the position that the sexual encounter with J.L. was consensual. Leopold argued that the prior act evidence should be excluded as more prejudicial than probative. In the event that the court decided to admit the prior act evidence, Leopold requested that the court limit the State's proof to the documents related to the prior case and exclude R.R.'s testimony.

Judge Devaney concluded that the probative value of the evidence outweighed any risk of unfair prejudice; however, he agreed to exclude the testimony of R.R. and to limit the State to the documentary record of the prior crime. Judge Devaney also excluded evidence of Leopold's assaults against several other victims.

During the trial, the court admitted redacted versions of the 1987 complaint, information, and judgment of conviction. Judge Devaney informed the jury that Leopold was convicted in 1987 of committing a second-degree sexual assault against R.R., and then read the information and complaint to the jury. The court also provided two jury instructions explaining the limited purpose for which the jury could consider the incident related to R.R.

Leopold argues on appeal that Judge Devaney abused his discretion in admitting the evidence of his sexual assault of R.R. Leopold asserts that the court failed to consider his youth at the time of the offense, the age of the offense, and the dissimilarity of the prior offense to the present case.

■ Alaska Rule of Evidence 404(b)(3) provides that, in a prosecution for sexual assault, "evidence of other sexual assaults or attempted sexual assaults by the defendant against the same or another person is admissible if the defendant relies on a defense of consent." Under this provision, evidence of

a defendant's character can be used as "circumstantial evidence of the defendant's likely conduct during the episode being litigated."[1] But the admission of evidence related to prior acts of sexual assault "is still limited by ... Evidence Rule 403, which requires courts to exclude evidence if its probative value is outweighed by the danger that it will engender unfair prejudice, confuse the issues, or mislead the jury."[2]

■ The factors that a trial judge must examine when deciding whether to admit evidence of a defendant's other acts are the following: (1) the strength of the government's evidence that the defendant actually committed the other acts; (2) the character trait the other acts tend to prove; (3) whether this character trait is relevant to any material issue in the case; (4) how seriously this issue is disputed; (5) whether litigation of the defendant's other acts will require an inordinate amount of time; and (6) whether the evidence of the defendant's other acts will lead the jury to decide the case on improper grounds.[3] We review the trial court's decision under Evidence Rule 403 for abuse of discretion.[4]

■ Leopold does not challenge the court's conclusion that he raised a consent defense, so the next step is to analyze whether the court abused its discretion in weighing these factors. On the first factor, the State introduced strong evidence that Leopold had sexually assaulted R.R. Outside the presence of the jury, the State offered the personal testimony of R.R. and the court documents that showed Leopold had been convicted of this offense. In response, Leopold did not offer any evidence disputing R.R.'s testimony that he had sexually assaulted her.

Leopold now argues that this proof was insufficient because the only information submitted to the jury was redacted versions of the complaint, information, and judgment of conviction. But Judge Devaney limited the

1. *Bingaman v. State,* 76 P.3d 398, 415 (Alaska App.2003).

2. *Bennett v. Anchorage,* 205 P.3d 1113, 1117 (Alaska App.2009) (considering the admission of prior acts of domestic violence in an assault prosecution).

3. *Bingaman,* 76 P.3d at 415–16.

4. *See Bennett,* 205 P.3d at 1118.

evidence that could be presented to the jury based on Leopold's argument that R.R.'s personal testimony would be more prejudicial than these documents. Regardless of this limitation, the judge could reasonably conclude that there was strong evidence that Leopold had sexually assaulted R.R.

On the second and third factors, this evidence was related to a relevant character trait. Leopold acknowledges that his defense at trial was that J.L. fabricated her account of what happened that evening and that her sexual encounter with Leopold was consensual. The evidence that Leopold had sexually assaulted R.R. tended to show that he was willing to sexually assault an incapacitated female relative and to continue with his assault even after the woman resisted. This character trait thus involves the same type of situational behavior at issue in this case.[5] The court could properly conclude that the similarity of these incidents was sufficient to outweigh any issue with the age of the prior offense.[6]

On the fourth factor, it also appears that the issue of J.L.'s consent was seriously disputed and that there was a need for this evidence. Leopold continues to argue that J.L. was unable "to recall even basic events within the relevant time period and ... had a strong motive to falsely allege that the sex was non-consensual." J.L. and Leopold were the only witnesses to the crime and a significant portion of the case turned on whether the jury believed J.L.'s statements, despite the gap in her memory. The evidence of Leopold's prior rape of R.R. was relevant to show that Leopold would sexually assault a family member.[7]

On the fifth factor, the parties agree that admission of this evidence did not take an inordinate amount of time.

On the sixth factor, Leopold argues that, because the testimony from J.L. was weak, the jury was unfairly swayed by the prior act evidence. But this court has previously held that "it is not fundamentally unfair to use character evidence for the limited purpose of circumstantially suggesting the likelihood that the defendant acted true to character during the episode being litigated." [8] The evidence was not overly inflammatory since it did not involve extremely violent or grotesque acts (outside of the sexual assault itself). And the court also instructed the jury that they could not rely on the evidence of Leopold's prior act, standing alone, to justify his conviction.

We conclude that Judge Devaney did not abuse his discretion in admitting the evidence of Leopold's prior sexual assault of R.R.

### The evidence of J.L.'s out-of-court statements was properly admitted or harmless error.

Leopold challenges the admission of J.L.'s statements to James Ayunerak, Marlene Ayunerak, and Trooper Williamson. Leopold concedes that the court did not err in admitting the statements J.L. made to her sister or to Colleen Palacios.

### J.L.'s statements to James Ayunerak

■ J.L. testified at trial that when James Ayunerak was driving her to the clinic, she informed Ayunerak that her brother raped her. Leopold did not object to this testimony. Ayunerak later testified that J.L. told him Leopold raped her. Leopold objected on the basis that the statement was hearsay. The court allowed the State to introduce this hearsay account of J.L.'s statement for the limited purpose of showing why Ayunerak took J.L. to the clinic.

■ Leopold argues on appeal that the court should not have admitted the statement because the reason why Ayunerak took J.L. to the clinic was irrelevant and undisputed. If hearsay testimony is admitted in error, the

5. *See Bingaman*, 76 P.3d at 415 (indicating the court should analyze whether the prior act demonstrates the same type of situational behavior at issue in the later case).

6. *See Mooney v. State*, 105 P.3d 149, 154 (Alaska App.2005) (concluding that a twenty-year-old

conviction was admissible because of the similarity of the offense).

7. *Id.*

8. *Bingaman*, 76 P.3d at 416.

error is harmless when there is no reasonable likelihood that the admitted evidence had an appreciable effect on the jury's decision.[9] Even if the court erred in admitting Ayunerak's testimony about the statement, any error was harmless because J.L.'s statements to Ayunerak were already properly before the jury.

### J.L.'s statements to Marlene Ayunerak

As noted above, on direct examination, J.L. testified that she woke up with Leopold on top of her. J.L. told Leopold to stop and unsuccessfully attempted to push him off with her hands and feet. On cross-examination, she admitted that the only things she remembered about the incident were that her brother was on top of her and that she was trying to push him off. She did not even remember if they had their clothes on or off. J.L. also testified that she could not remember anything about her statements to Marlene Ayunerak at the clinic.

Marlene Ayunerak later testified that, at the clinic, J.L. informed her that "she got beat up and raped" by Leopold earlier that morning. Leopold's attorney objected on hearsay grounds, but Judge Devaney ruled that this evidence was admissible as a prior inconsistent statement. On appeal, Leopold argues that this ruling was improper because J.L.'s statement was not inconsistent with her testimony.

■ Alaska Rule of Evidence 801(d)(1) allows the court to admit a prior statement by a witness if the "declarant testifies at the trial or hearing and the statement is ... inconsistent with the declarant's testimony." Inconsistency "does not necessarily require textual conflict; other circumstances, including lack of memory at trial, may suffice." [10] In other words, a statement is inconsistent when the witness testifies that he or she cannot remember the event that the state-

ment describes.[11] The offering party must show that the prior statement is inconsistent with the declarant's testimony and give the declarant an opportunity to explain or deny the statement.[12]

■ In this case, Leopold's cross-examination established that J.L. could not remember anything about this incident, except that her brother was on top of her and that she was trying to push him off. In particular, J.L. apparently could not testify that Leopold had raped her and beat her up. The prosecutor confronted her with her statements to Marlene Ayunerak, but J.L. could not remember making those statements. Under these circumstances, the court properly allowed the State to introduce J.L.'s statements to Ayunerak as prior inconsistent statements.

### J.L.'s statements to Trooper Williamson

J.L. testified that she did not recall speaking with Trooper Williamson while she was at the clinic. J.L. also testified that she did not remember that Williamson asked her whether Leopold penetrated her. At that point, Leopold's attorney said, "I have a continuing objection to the lack of foundation, the hearsay, and the leading." The court·replied, "Objection noted. Thank you."

The following day, Williamson testified and the prosecutor asked Williamson about the same conversation with J.L. Williamson testified that J.L. informed him that Leopold penetrated her, that his penis went inside her, and that she attempted to defend herself. Leopold's attorney did not object.

On appeal, Leopold challenges the admission of J.L.'s statements to Trooper Williamson. Leopold argues that the "defense did not make a new objection, but instead apparently relied on the continuing objection made during J.L.'s testimony." Leopold asserts

**9.** *Jones v. State,* 215 P.3d 1091, 1101 & n. 24 (Alaska App.2009) (citing *Love v. State,* 457 P.2d 622, 632 (Alaska 1969)).

**10.** *Vaska v. State,* 135 P.3d 1011, 1015 (Alaska 2006).

**11.** *See Richards v. State,* 616 P.2d 870, 871 (Alaska 1980); *Wassilie v. State,* 57 P.3d 719, 722–23

(Alaska App.2002); *Brandon v. State,* 839 P.2d 400, 411–12 (Alaska App.1992); *Van Hatten v. State,* 666 P.2d 1047, 1051 (Alaska App.1983), *abrogated on other grounds by Adams v. State,* 261 P.3d 758 (Alaska 2011).

**12.** *Vaska,* 135 P.3d at 1015–16.

that the "continuing objection" during J.L.'s testimony was sufficient to preserve his challenge to Williamson's testimony.

█ Under Alaska Criminal Rule 46, in order to preserve a claim, a party must "at the time the ruling or order of the court is made or sought, make[ ] known to the court the action which the party desires the court to take or the party's objection to the action of the court and the grounds therefor." "[T]he ground of an objection must be clearly stated so that the [lower] court may intelligently rule upon the objection."[13] If there is no "comprehensible objection, the point [is] not properly preserved for appeal."[14]

█ We conclude that Leopold failed to make it clear to the court that he wanted the objection he made to J.L.'s testimony to apply to Williamson's testimony the following day. Leopold made no effort to either object to the hearsay the following day or to ensure that the court interpreted his prior objection as applying to Williamson's testimony, as well as J.L.'s testimony. Although the court could have been clearer about the scope of its ruling the previous day, Leopold still had the burden to seek clarification of the court's ruling, if necessary, and to clearly state his request. Leopold failed to properly preserve this hearsay challenge because he did not make it clear that his objection extended to Williamson's testimony.

█ It was not obvious that Leopold's objection to J.L.'s testimony would also apply to Williamson's testimony. As noted above, in order to introduce J.L.'s statement to Williamson as a prior inconsistent statement, the prosecutor was required to give J.L. the opportunity "to explain or to deny the statement."[15] Leading questions may be employed to establish this foundation.[16] The trial judge properly overruled Leopold's objection during J.L.'s testimony because the prosecutor's questions were not leading nor

was J.L.'s elicited testimony hearsay—it was merely foundational.

█ Williamson's testimony, on the other hand, was the permissible product of this foundation. J.L.'s statement to Williamson that she had been penetrated by Leopold was inconsistent with her testimony that she could not remember anything except trying to push Leopold off of her. J.L. was properly confronted with this statement and she could not remember making it. So, even if Leopold had renewed his hearsay objection, it would have been properly overruled because J.L.'s statement to Williamson was admissible as a prior inconsistent statement.

*Leopold's sentence was not excessive.*

The presentence report indicated that Leopold had a long history of criminal misconduct. Leopold committed second-degree burglary in 1984, when he was fourteen years old. Two years later, Leopold forcibly dragged his female cousin under a building and committed first-degree sexual assault while she "screamed" and "cried." Leopold was adjudicated a delinquent and placed at McLaughlin Youth Center. Thirty days after being released, when Leopold was eighteen years old, he "held his aunt down and penetrated her vaginally with his penis, 'while she was yelling and screaming.'" Leopold was sentenced to seven years with five years suspended for this offense. Within thirty days of being released on parole for the sexual assault of his aunt, he amassed four incident reports, including an assault. Leopold failed to attend counseling, and his parole was revoked.

When Leopold was twenty-one, he sexually assaulted a fifteen-year-old girl at a school dance. In response, the court imposed three years of the suspended time from his previous conviction. During that investigation, a probation officer spoke with Leopold's girlfriend, who stated that Leopold also sexually assaulted her. The probation officer de-

13. *Williams v. State*, 629 P.2d 54, 62 (Alaska 1981) (alterations in original) (quoting *State v. Miller*, 79 N.M. 117, 440 P.2d 792, 795 (1968)).

14. *Pierce v. State*, 261 P.3d 428, 432 (Alaska App.2011) (alteration in original) (quoting *Williams*, 629 P.2d at 62).

15. *See* Alaska Evid. R. 801(d)(1)(a)(i).

16. *See* Alaska Evid. R. 611(c)(1).

scribed Leopold as a "predatory rapist" and stated that "Leopold is sexually maladjusted and at high risk to rape again."

In 1998, Leopold was convicted of fourth-degree domestic violence assault, sixth-degree misconduct involving a controlled substance, and failure to register as a sex offender. In 1999, Leopold was convicted of another assault.

About this time, the authorities found out that Leopold had a fifteen-year-old girlfriend; in 2001, he was convicted of third-degree attempted sexual abuse of a minor. In 2002, Leopold committed fourth-degree assault and violated the conditions of his release when he assaulted his seventeen-year-old girlfriend and her eleven-year-old sister. In 2004, Leopold was convicted of third-degree assault and fourth-degree misconduct involving weapons for threatening to kill a village public safety officer and for discharging a shotgun.

Based on this prior history and the circumstances of this offense, the presentence report recommended that the court sentence Leopold to the maximum term of ninety-nine years' imprisonment.

As a third felony offender, Leopold was subject to a presumptive range of forty to sixty years' imprisonment and a maximum term of ninety-nine years with five years suspended for the first-degree sexual assault conviction.[17] At the sentencing hearing, Judge Devaney found four aggravating factors: that Leopold had repeated instances of assaultive behavior,[18] that Leopold had an adjudication as a delinquent for conduct that would have been a felony if committed by an adult (the sexual assault committed against his cousin),[19] that Leopold had a history of committing repeated crimes similar in nature to the underlying offenses (based on his convictions for third-degree attempted abuse of a minor and second-degree sexual assault)[20] and that he had five or more convictions for class A misdemeanors.[21]

Judge Devaney found that Leopold had "a very serious juvenile history" including the sexual assault against his cousin. The judge noted that the sexual assault of his aunt was especially frightening because it was committed in revenge or in retaliation for the adjudication of his sexual assault of her daughter. He noted Leopold also had a sexual abuse of a minor conviction in 2001. The judge found Leopold had been unable to succeed at any of the treatment offered to him. The judge found that Leopold "presents a clear risk to the public" because of his "consistent criminal history over the years." Based on Leopold's background and criminal history, the judge concluded that Leopold was a worst offender.

Judge Devaney also concluded that no sentence of imprisonment would likely deter Leopold because his numerous prior attempts at rehabilitation had been unsuccessful. He also noted the importance of community condemnation and reaffirmation of societal norms in view of the length of Leopold's criminal history and the circumstances of the present offense.

Judge Devaney merged the first- and second-degree sexual assault convictions. He sentenced Leopold to ninety-nine years' imprisonment with five years suspended for the first-degree sexual assault conviction. He also imposed twenty years with five years suspended for the incest conviction, and made ten years of the incest sentence concurrent. Leopold's composite sentence was 109 years with ten years suspended or ninety-nine years to serve.

Leopold argues on appeal that the judge should not have found that he was a worst offender. In determining whether a defendant is a worst offender, a sentencing judge may examine several factors, including the defendant's "prior criminal convictions, age, military records, employment history, drug or alcohol addiction, presentence report evaluations and recommendations, and behavior which has been considered to

17. AS 12.55.125(i)(1)(E), (*o* ).

18. AS 12.55.155(c)(8).

19. AS 12.55.155(c)(19).

20. AS 12.55.155(c)(21).

21. AS 12.55.155(c)(31).

demonstrate an antisocial nature or dangerous propensities which pose a clear risk to the public."[22] A worst offender finding can be based either on the defendant's current offense or the defendant's criminal history or both."[23]

▉ In this case, the record supports the worst offender finding. Leopold had multiple prior criminal convictions, including second-degree sexual assault, attempted sexual abuse of a minor, assault, failure to register as a sex offender, and several probation revocations. And as a juvenile, Leopold committed sexual assault and second-degree burglary. Leopold was thirty-nine years old; his current offense is not related to immaturity. Leopold did not graduate from high school, had no military service, and appears to have been previously employed only by correctional facilities. Leopold's alcohol addiction appears to have had a strong influence on many of his prior convictions.

The presentence report evaluations and recommendations also support the conclusion that Leopold was a worst offender. Leopold's probation officers concluded that he is a predatory rapist; he is "sexually maladjusted and at high risk to rape again"; he is "an extreme danger to the public"; he should be "considered a very serious, violent, and worst offender"; rehabilitation is not a "viable option"; and he "continues to be a danger to society." Leopold had multiple, prior opportunities to participate in treatment and rehabilitation, as well as a history of similar offenses. There is ample support to conclude that Leopold has dangerous propensities that pose a clear risk to the public.

Leopold relies on several cases where individuals were treated as worst offenders to demonstrate why he is not a worst offender. But those cases do not necessarily establish a

ceiling or benchmark.[24] There was ample support in this case for the court's conclusion that Leopold is a worst offender.

▉ Leopold also argues that his composite sentence should not have exceeded the maximum sentence of imprisonment for first-degree sexual assault. He relies on *Neal v. State*, where the Alaska Supreme Court adopted a rule that a sentencing judge should not impose consecutive sentences that total more than the maximum sentence for a defendant's most serious offense, unless the judge expressly finds that the total sentence is necessary to protect the public.[25] But the lack of "an express finding of necessity may be excused where the need to isolate the defendant is apparent from the record."[26] And this court recently recognized that this rule is only "a starting point or guide for analyzing the proper severity of a defendant's composite sentence—and that a composite sentence greater than [this] ceiling can sometimes be justified by sentencing goals other than the particular goal of protecting the public."[27]

In Leopold's case, the court did state that the sentence was necessary because Leopold presented "a clear risk to the public." It also appears from the record that Leopold had a criminal history of assaulting and sexually assaulting members of his community, and that he was unresponsive to treatment. This record supports Judge Delaney's implicit conclusion that a five-year consecutive sentence to serve was necessary to protect the public.

Leopold also asserts that his sentence is excessive because his sentence is "the longest sentence in the history of Alaska appellate cases for a non-homicide conviction." Leopold compares his case to other Alaska cases

---

**22.** *State v. Wortham*, 537 P.2d 1117, 1120 (Alaska 1975).

**23.** *See id.*

**24.** *See Hurn v. State*, 872 P.2d 189, 199–200 (Alaska App.1994) (concluding that our affirmance of a sentence on appeal "means only that we conclude the sentence is not excessive" and "does not set a ceiling on sentences in similar cases, nor does it necessarily mean that we

would not have affirmed a greater sentence in the appeal being litigated").

**25.** 628 P.2d 19, 21 (Alaska 1981); *see also Mutschler v. State*, 560 P.2d 377, 380 (Alaska 1977).

**26.** *Peruski v. State*, 711 P.2d 573, 574 (Alaska App.1985) (citing *Neal*, 628 P.2d at 21).

**27.** *Phelps v. State*, 236 P.3d 381, 393 (Alaska App.2010).

where the defendants committed multiple or particularly egregious sexual assaults.

Leopold's reliance on previous sentencing decisions by this court is of limited value. As discussed earlier, when we affirm a sentence on appeal, that holding "does not set a ceiling on sentences in similar cases, nor does it necessarily mean that we would not have affirmed a greater sentence in the appeal being litigated."[28] Several of the cases relied on by Leopold were also decided prior to the legislature's 2006 revisions to the sentencing scheme for sexual offenses.[29]

In *Sikeo v. State,* this court recently reviewed a case where the defendant was subject to a presumptive ninety-nine year sentence for first-degree sexual abuse of a minor because he had two prior convictions for sexual felonies.[30] We ultimately concluded that the ninety-nine year presumptive term did not constitute cruel and unusual punishment.[31]

In Leopold's case, he was subject to a forty- to sixty-year presumptive range for first-degree sexual assault because he had two prior felonies: one conviction for second-degree sexual assault and one conviction for third-degree assault. If Leopold had been convicted as an adult for the sexual assault of his cousin in 1986, or if he had been convicted of sexually assaulting his girlfriend, or the girl at the school dance, then he would have been subject to a presumptive term of ninety-nine years—the same sentence we reviewed in *Sikeo.*[32] Although *Sikeo* is not directly on point, the case illustrates why Leopold's sentence was not clearly mistaken.

As noted above, we conclude that the sentencing judge could reasonably decide that Leopold was a worst offender who deserved a maximum sentence for first-degree sexual assault, and that a five-year consecutive sentence to serve was necessary to protect the public. We accordingly conclude that Leopold's composite sentence of 109 years' imprisonment with ten years suspended was not clearly mistaken.

### Conclusion

We AFFIRM the superior court's judgment and sentence.

28. *Hurn,* 872 P.2d at 199–200.

29. *See* AS 12.55.125(i); Ch. 14, § 4, SLA 2006.

30. 258 P.3d 906, 908 (Alaska App.2011).

31. *Id.* at 912.

32. *See* AS 12.55.125(i)(1)(F).